**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DANIEL REDMOND,**

                                        **Plaintiff,**

        **vs.**                                        **5:15-cv-00646**
                                                        **(MAD/ATB)**

**TELEDYNE LANDIS MACHINE;**
**KENNAMETAL INC.,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**WEISBERG & ZUKHER, PLLC**             **DAVID E. ZUKHER, ESQ.**
State Tower Building
109 South Warren Street
Suite 410
Syracuse, New York 13202-1849
Attorneys for Plaintiff

**SWARTZ CAMPBELL, LLC**                **L. JOHN ARGENTO, ESQ.**
Pittsburgh Office                       **NICHOLAS J. ZIDIK, ESQ.**
436 7th Avenue, 7th and 8th Floors
Pittsburgh, Pennsylvania 15219
Attorneys for Defendants

**PETRONE & PETRONE, PC**               **MARK O. CHIECO, ESQ.**
Utica Office
1624 Genesee Street
Utica, New York 13502
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On April 17, 2015, Plaintiff Daniel Redmond ("Plaintiff") filed a complaint in the State of

New York Cayuga County Supreme Court against Defendants Teledyne Landis Machine and

Kennametal, Inc. ("Kennametal") (collectively, "Defendants"), and against Nesco, Inc. and Barth Industries, Co. ("Barth"), both of which have been dismissed from this action. *See* Dkt. Nos. 2, 10, 25. Defendants filed a notice of removal on May 27, 2015. *See* Dkt. No. 1. Defendants filed a motion for summary judgment on November 14, 2016, *see* Dkt. No. 34, which Plaintiff opposes, *see* Dkt. No. 38. On December 22, 2016, Defendants filed a motion to deem the entire statement of material facts as admitted and a motion to preclude the report and affidavit of Plaintiff's expert. *See* Dkt. Nos. 39, 40. Plaintiff did not respond to those motions.

Currently before the Court are Defendants' motion for summary judgment, Defendants' motion to deem the entire statement of material facts as admitted, and Defendants' motion to preclude the report and affidavit of Plaintiff's expert. *See* Dkt. Nos. 34, 39, 40.

## II. BACKGROUND

### A. Factual Background

#### 1. Plaintiff's Injury

At the time of the accident giving rise to this action, Plaintiff was employed as a machinist with a gas metering components fabricating company called UPSCO, Inc. ("UPSCO"). *See* Dkt. No. 34-4 ¶ 1; Dkt. No. 2 ¶¶ 14-15. On May 7, 2012, while operating a pipe-cutting machine in the course of his employment, Plaintiff lost his left thumb. *See* Dkt. No. 34-4 ¶¶ 2-3; Dkt. No. 2 ¶ 16. Plaintiff cannot recall the exact sequence of events leading up to the accident, and none of Plaintiff's co-workers directly witnessed the accident. *See* Dkt. No. 34-4 ¶¶ 21-22; Dkt. No. 34-10 at 47-48; Dkt. No. 34-11 at 15-16; Dkt. No. 34-12 at 21; Dkt. No. 34-13 at 21.

The pipe-cutting machine was a No. 2BA Landis Semi-Automatic Air Operated Roller Pipe Cutter (the "Pipe Cutter"). *See* Dkt. No. 34-4 ¶ 3; Dkt Nos. 34-7, 34-8. The Pipe Cutter was manufactured at least fifty-six years prior to Plaintiff's accident by Landis Machine Co. *See* Dkt.

No. 34-4 ¶ 4.  In 1956, Landis Machine Co. sold the Pipe Cutter to Olney Pipe Products Co. in Philadelphia, Pennsylvania.  *See id.* ¶ 5; Dkt. No. 34-3 ¶¶ 5-6.  From that point, the Pipe Cutter's history is largely unaccounted for.  Plaintiff's employer, UPSCO, purchased the Pipe Cutter from a company called Stanley Machinery Corp. in March of 2010.  *See* Dkt. No. 34-4 ¶ 9; Dkt. No. 34-8.  The Pipe Cutter was presented to UPSCO as "refurbished," but the extent of that refurbishment is unknown.  *See* Dkt. No. 34-4 ¶ 9; Dkt. No. 34-10 at 15-16.  The parties are unsure of how many entities owned the Pipe Cutter before UPSCO's purchase in March of 2010. *See* Dkt. No. 34-4 ¶¶ 8-9; Dkt. No. 34-14 at 3-4.

To operate the Pipe Cutter, the operator pushes a pipe onto a set of rollers until the pipe hits a back stop plate, which would begin to spin the rollers and lower the cutting wheel to cut the pipe.  *See* Dkt. No. 34-4 ¶ 6.  When the Pipe Cutter was originally manufactured and sold to Olney Pipe Products Co. in 1956, the Pipe Cutter did not have any kind of guard at the operation area of the rollers.  *See id.* ¶ 7.  However, deposition testimony revealed that, by the time UPSCO purchased the Pipe Cutter, someone had added a diamond plated metal guard at the point where the pipe is fed onto the rollers.  *See id.* ¶ 10; Dkt. No. 34-10 at 29-30; Dkt. No. 34-12 at 29-30. After the accident, this guard was replaced with a new Plexiglas guard.  *See* Dkt. No. 34-4 ¶¶ 11-13.  The parties have not been able to find the metal guard after it was replaced with the Plexiglas guard, as it was apparently discarded, and there are no pictures of the Pipe Cutter with the metal guard on it.  *See id.* ¶ 12; Dkt. No. 34-12 at 29-30.  As such, the only information regarding the metal guard that the parties are aware of comes from the deposition testimony of Plaintiff's co-workers.

According to several of Plaintiff's co-workers, the new Plexiglas guard was similar in design to the metal guard that was on the machine the day of Plaintiff's injury.  *See* Dkt. No. 34-4

¶ 13; Dkt. No. 34-12 at 29-32.  Plaintiff's supervisor, George Walker, testified at his deposition that he was the person who replaced the metal guard with the Plexiglas guard.  *See* Dkt. No. 34-12 at 31-32.  Mr. Walker testified that he used the metal guard as a template for the new Plexiglas guard.  *See id.*

As mentioned above, no one saw the exact sequence of events leading up to the accident.  Plaintiff's co-worker, James Peek, was very close to Plaintiff when the accident occurred.  *See* Dkt. No. 34-13 at 19-21.  In his deposition, Mr. Peek testified that he saw Plaintiff standing too close to the operation area just before the accident occurred.  *See id.* at 20.  Mr. Peek testified that he did not actually see Plaintiff's thumb go into the point of operation where the rollers were located, but that he did see Plaintiff's thumb spinning around the rollers after it became detached.  *See id.* at 21.  Several co-workers testified that Plaintiff's thumb was detached by the rollers, and not by the cutting wheel.  *See id.* at 27-28; Dkt. No. 34-12 at 28.  The Pipe Cutter had not caused any injuries to anyone else before Plaintiff's accident.  *See* Dkt. No. 34-4 ¶ 17; Dkt. No. 34-10 at 26; Dkt. No. 34-12 at 27.

### *2. Corporate Liability for the Pipe Cutter*

It is undisputed the Pipe Cutter was manufactured by a company called Landis Machine Co.  *See* Dkt. No. 34-4 ¶ 5; Dkt. No. 38 ¶ 8.  The parties do, however, generally dispute the nature of the relationship between the original Landis Machine Co. and Kennametal.  Plaintiff claims that Kennametal is the corporate successor to Landis Machine Co., and therefore, should be held liable for the torts of Landis Machine Co.  *See* Dkt. No. 38-18 at 2.  Defendants claim that Plaintiff has failed to establish that Kennametal is the corporate successor to Landis Machine Co., and thus should not be held liable for the torts of Landis Machine Co.  *See* Dkt. No. 34-5 at 8-10.

With that said, the parties generally agree on the sequence of events that ultimately led up to Kennametal's asset purchase from the original Landis Machine Co.

The original manufacturer of the Pipe Cutter, Landis Machine Co., ceased to exist in April of 1968 when all of its assets were acquired by Teledyne Machine Corp. *See* Dkt. No. 34-3 ¶ 8. On May 15, 1968, Teledyne Machine Corp. changed its name to Landis Machine Company. *See id.* ¶ 9. On October 31, 1969, Landis Machine Company merged into Teledyne Argonaut Corporation. *See id.* Several days later, Teledyne Argonaut Corporation changed its name to Teledyne Mid-America Corporation. *See id.* ¶ 10. On December 31, 1975, Teledyne Mid-America Corporation merged into Teledyne Industries, Inc. *See id.* Teledyne Industries, Inc. sold certain assets to Barth Industries in 1977, including the Landis pipe threading, gear, and roll forming machine product line. *See id.* ¶ 11. Teledyne Industries, Inc. changed its name to TDY Industries, Inc. on December 9, 1999. *See id.* ¶ 12. On January 2, 2012, TDY Industries, Inc. converted to an LLC. *See id.* Finally, on November 4, 2013, TDY Industries, LLC sold the remaining assets of its Landis division to Kennametal. *See id.* ¶ 13.

With respect to Teledyne Landis Machine, the other remaining Defendant in this action, Plaintiff originally alleged that Teledyne Landis Machine is a foreign corporation with a principal place of business in Waynesboro, Pennsylvania. *See* Dkt. No. 2 ¶ 2. In Defendants' answer, they claim that Teledyne Landis Machine was never a corporation itself, but merely a division of Teledyne Argonaut Corporation. *See* Dkt. No. 6 ¶ 2. Plaintiff does not appear to dispute this, and both parties throughout this case refer to Defendants collectively by just referring to Kennametal. As such, the Court will consider Plaintiff's claims as against Kennametal.

**B.      Procedural Background**

Plaintiff filed his complaint on April 17, 2015 in state court, and Defendants removed the case on May 27, 2015. *See* Dkt. Nos. 1, 2. Plaintiff alleges five causes of action, including negligence, strict products liability, breach of express and implied warranties, major defect, and negligent failure to warn or to take corrective action. *See* Dkt. No. 2 ¶¶ 17-58.

On June 11, 2015, Magistrate Judge Andrew T. Baxter approved Plaintiff's stipulation dismissing Nesco, Inc. from this action. *See* Dkt. Nos. 9, 10. On April 20, 2016, the Court ordered a stipulation of discontinuance as to Barth. *See* Dkt. No. 25. As such, the only remaining Defendants are Teledyne Landis Machine and Kennametal.

Plaintiff's expert disclosures were due on June 1, 2016, and Defendants' expert disclosures were due on July 18, 2016. *See* Dkt. No. 23. Judge Baxter set the close of discovery for September 15, 2016. *See* Dkt. No. 33. Plaintiff's counsel timely served Defendants with an expert witness disclosure document on or about February 1, 2016, which listed the names and some information about Plaintiff's purported expert witnesses. *See* Dkt. No. 40-2 ¶ 5; Dkt. No. 34-16. However, Plaintiff's counsel did not supplement this disclosure with written reports from those witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(b). *See* Dkt. No. 34-16. Instead, Plaintiff's counsel provided Defendants a written report from Dr. James W. Pugh, one of the witnesses listed in Plaintiff's expert disclosure list, on September 14, 2016. *See* Dkt. No. 40-2 ¶ 7. This report was served several months after expert disclosures were due and only one day before the final close of discovery. Moreover, Dr. Pugh's written report was self-dated July 15, 2016, which was still after expert disclosures were due. *See* Dkt. No. 34-17 at 2. Plaintiff's counsel has not provided any written reports from the other experts identified in Plaintiff's initial expert disclosures.

The Court also notes that, even though Plaintiff's counsel has had ample time and opportunity to conduct discovery, Plaintiff's counsel has conducted virtually no discovery in this case whatsoever. Instead, Plaintiff's counsel apparently relies on various newspaper articles, a yellow page listing, and website postings in order to survive the instant motion for summary judgment. *See* Dkt. Nos. 38-6, 38-7, 38-8, 38-9, 38-10.

Moreover, with respect to Defendants' motion for summary judgment, Plaintiff's counsel did not file a response to Defendants' Statement of Material Facts, in violation of Local Rule 7.1(a)(3). *See* Local Rules N.D.N.Y. 7.1(a)(3); Dkt. No. 38. Plaintiff's counsel did attach an affidavit from Dr. Pugh in Plaintiff's opposition papers to Defendants' motion for summary judgment. *See* Dkt. No. 38-17. This affidavit is similar to Dr. Pugh's original report, except the affidavit has additional opinions which were not contained in Dr. Pugh's original report, and which were clearly added in an attempt to survive the instant motion for summary judgment. One of Defendants' primary arguments in their motion for summary judgment is that there is no evidence in the record that an alternative feasible design was available at the time of the Pipe Cutter's manufacture, which is an element of Plaintiff's design defect claim. *See* Dkt. No. 34-5 at 16-17. Defendants are correct that Dr. Pugh's original report says nothing about whether there was a safer, alternative feasible design available for the Pipe Cutter at the time of manufacture, and in fact, the report claims that such a design was feasible merely because of a remedial measure taken after Plaintiff's injury in this case. *See* Dkt. No. 34-17 at 3. However, in Dr. Pugh's affidavit, which was filed as part of Plaintiff's opposition papers, Dr. Pugh concludes that such a design was not only feasible but was the industry standard at the time of manufacture. *See* Dkt. No. 38-17 ¶¶ 20-22. Indeed, this information is not contained anywhere in the record

except in Dr. Pugh's subsequent affidavit filed in response to Defendants' motion for summary judgment.

Defendants have filed a motion to deem the entire statement of material facts as admitted, *see* Dkt. No. 39, and a motion to preclude Dr. Pugh's original report and subsequent affidavit, *see* Dkt. No. 40. Astonishingly, in light of the significant disadvantage that Plaintiff would face if those motions were granted, Plaintiff's counsel did not respond to those motions or offer any kind of explanation for not responding.

### III. DISCUSSION

**A.      Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the

citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Defendants' Motion to Deem the Entire Statement of Material Facts as Admitted**

In Plaintiff's opposition to Defendants' motion for summary judgment, Plaintiff filed a number of exhibits and affidavits, as well as a memorandum of law, but Plaintiff failed to file the required responsive statement of material facts. *See generally* Dkt. No. 38. Accordingly, Defendants filed a motion to deem the entire statement of material facts as admitted. *See* Dkt. No. 39. Plaintiff did not respond to Defendants' motion.

Local Rule 7.1(a)(3) provides as follows:

>        Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.</u>

>        The moving party shall also advise *pro se* litigants about the consequences of their failure to respond to a motion for summary judgment. <u>See also L.R. 56.2</u>.

>        The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. <u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>. The non-movant's

> response may also set forth any additional material facts that the
> non-movant contends are in dispute in separately numbered
> paragraphs, followed by a specific citation to the record where the
> fact is established.

Local Rules N.D.N.Y. 7.1(a)(3).

Local Rule 7.1(a)(3) provides that the Court shall deem as admitted those facts in the statement of material facts that are "properly supported" and that the opposing party does not specifically controvert. *See id.* As such, courts in this district have held that when the non-moving party fails to file a responsive statement of material facts, the facts in the moving party's statement of material facts should be deemed admitted "to the extent they are supported by evidence in the record." *Riehl v. Martin*, No. 9:13-cv-439, 2014 WL 1289601, *5 (N.D.N.Y. Mar. 31, 2014). However, the Second Circuit has acknowledged that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation omitted).

Plaintiff did submit an affidavit from his attorney as part of his opposition papers, which appears to dispute some of the statements in Defendants' statement of material facts. *See* Dkt. No. 38. It is well settled that "if an attorney's affidavit contains factual assertions not made upon personal knowledge and/or legal arguments, such portions of the affidavit would not be considered by the court in connection with the pending motion for summary judgment." *New York v. Solvent Chem. Co.*, 218 F. Supp. 2d 319, 331 (W.D.N.Y. 2002). While some of the assertions in the affidavit are not based on Plaintiff's attorney's personal knowledge and have no support in the record, which the Court will discuss below, other assertions contain adequate citations to the record and purport to contest some of Defendants' assertions in their statement of material facts. Accordingly, the Court, in its discretion, will deem admitted those facts in Defendants' statement of material facts that are properly supported by admissible evidence in the

10

record and not specifically controverted by Plaintiff's attorney's citations to the record in his affidavit.[1]  *See Conte v. Cty. of Nassau*, No. 06-CV-4746, 2010 WL 3924677, *1 n.2 (E.D.N.Y. Sept. 30, 2010).

**C.    Defendants' Motion to Preclude Plaintiff's Expert's Report and Affidavit**

Defendants have also filed a motion to preclude the initial report and subsequent affidavit of Dr. James W. Pugh, Plaintiff's only expert witness in this case.  *See* Dkt. No. 40.  As discussed above, Plaintiff timely disclosed the identity and some basic information about Dr. Pugh, but did not accompany that disclose with a written report by Dr. Pugh until several months after expert disclosures were due.  Then, in response to Defendants' motion for summary judgment, Plaintiff attached an affidavit by Dr. Pugh which had additional opinions, not contained in Dr. Pugh's report, that purported to raise questions of material fact regarding whether an alternative design for the Pipe Cutter was feasible at the time of manufacture.  *See* Dkt. No. 38-17 ¶¶ 20-22. Defendants argue that both the report and affidavit should be precluded.  Again, Plaintiff failed to respond to this motion.

Fed. R. Civ. P. 26(a)(2) requires a party to "disclose to other parties the identify of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A).  Rule 26(a)(2)(B) further provides that the disclosure "must be accompanied by a written report – prepared and signed by the witness[,]" which must contain, among other things, "a complete statement of all opinions the witness will express and the basis

---

[1] The Court notes that, since Plaintiff did not conduct much discovery in this case, there is not much evidence in the record that Plaintiff can point to that contradicts Defendants' statement of material facts.  While the Court in no way condones Plaintiff's attorney's failure to comply with the Local Rules, the Court does not want to ignore the limited admissible evidence that Plaintiff does have in the record to support his claims solely because Plaintiff's attorney did not file a responsive statement of material facts.

and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B). Rule 37(c) provides that if a party fails to disclose such information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Courts have acknowledged that precluding expert testimony is a drastic remedy that "should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules." *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995) (citation omitted). Preclusion of expert testimony is especially harsh in a products liability case based on a design defect, because "[a] party cannot survive summary judgment on a design defect claim without admissible expert testimony." *See Frazer v. ITW Food Equip. Grp. LLC*, No. 11-CV-9699, 2013 WL 6164486, *5 (S.D.N.Y. Nov. 22, 2013) (citation omitted). When determining whether to preclude an expert's trial testimony based on a party's failure to make timely expert disclosures, courts consider "(1) the reason for the failure to timely disclose, (2) the importance of the testimony, (3) potential prejudice in allowing the testimony, and (4) the availability of a continuance to cure such prejudice." *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 68 (W.D.N.Y. 2004), *aff'd and adopted*, 233 F.R.D. 126 (W.D.N.Y. 2005).

In the present matter, Plaintiff did not accompany the initial expert disclosure of Dr. Pugh with a written report by Dr. Pugh, which was clearly a violation of Rule 26(a)(2). Plaintiff served this report upon Defendants on September 14, 2016, several months after expert disclosures were due. *See* Dkt. No. 40-2 ¶ 7. Plaintiff's failure to comply with Rule 26 was not substantially justified or harmless, and, in fact, Plaintiff's attorney has offered no explanation whatsoever as to why he failed to comply with Rule 26. Accordingly, the Court may preclude Dr. Pugh's report, or the Court may impose other appropriate sanctions pursuant to Rule 37(c)(1). Considering the

drastic nature of precluding an expert report in a case such as this, the Court finds that precluding Dr. Pugh's report would be too harsh. Defendants did receive the report well in advance of moving for summary judgment. Although the Court might normally consider a different appropriate sanction that is less severe than precluding the expert report, the Court is ultimately granting Defendants' motion for summary judgment and dismissing Plaintiff's case. As such, there is no need to reopen discovery to allow Defendants an opportunity to depose Dr. Pugh, or to impose any additional sanction.

With respect to Dr. Pugh's subsequent affidavit that was attached to Plaintiff's opposition papers, the Court will preclude the opinions in that affidavit that are beyond the scope of Dr. Pugh's original report. As mentioned, Rule 26 requires that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B). "Thus, '[i]t should be assumed that at the time an expert issues his [or her] report, that report reflects his [or her] full knowledge and complete opinions on the issue for which his [or her] opinion has been sought.'" *Engler v. MTD Prod., Inc.*, 304 F.R.D. 349, 354-55 (N.D.N.Y. 2015) (quoting *Hunt v. CNH America LLC*, 857 F. Supp. 2d 320, 339 (W.D.N.Y. 2012)). Again, Rule 37(c) prohibits a party a party from using information that was not disclosed properly pursuant to Rule 26(a) unless the failure to disclose was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c). "The intent behind this rule 'is to prevent the practice of "sandbagging" an opposing party with new evidence.'" *Engler*, 304 F.R.D. at 355 (quoting *Haas v. Delaware and Hudson Ry. Co.*, 282 Fed. Appx. 84, 86 (2d Cir. 2008)).

In Dr. Pugh's original report, he mentioned nothing about the manufacturing standards at the time that the Pipe Cutter was manufactured and designed. Dr. Pugh concluded that the Pipe Cutter could have been designed with a guard at the area of operation, which would have

purportedly prevented Plaintiff's injury. *See* Dkt. No. 34-17 at 3. Dr. Pugh explained that such a guard was economic and feasible "because of the remedial measure placed on the machine after the accident." *Id.* As the Court has noted, the Pipe Cutter was manufactured at least fifty-six years prior to Plaintiff's injury. Indeed, Dr. Pugh's report mentions nothing about whether it was feasible at the time of manufacturing to include a guard on the Pipe Cutter. Dr. Pugh offered no opinion in his report regarding the costs of including such guarding at that time or whether guarding such machines had even been implemented at that time. It appears that Dr. Pugh's opinion on the feasibility of including a guard was solely based on the remedial measure taken, which, again, occurred many decades after the Pipe Cutter was designed.

Noting this deficiency in Plaintiff's case, Defendants moved for summary judgment on Plaintiff's design defect claim, arguing that Plaintiff had not established any industry standards at the time of manufacturing or that there was an alternative feasible design available at that time. *See* Dkt. No. 34-5 at 16-18. Defendants specifically noted that Dr. Pugh's report contained no information regarding industry standards or the feasibility of such a design for the era at issue. *See id.* at 17-18. However, in Plaintiff's response to Defendants' motion for summary judgment, Plaintiff attached an affidavit by Dr. Pugh, wherein he claimed that including a guard at the danger zone of the machine was not only feasible, but was also the industry standard at the time of manufacture. *See* Dkt. No. 38-17 ¶¶ 20-22. Other than Dr. Pugh's several assertions regarding the feasibility of adding a guard to the machine at the time of manufacturing, the affidavit is similar to his initial report, although presented in a different format. *See id.* ¶¶ 1-25.

The Court finds that preclusion of portions of this affidavit is appropriate. The affidavit contains completely new information that was not contained in Dr. Pugh's report, and was clearly added in an attempt to survive Defendants' summary judgment motion. The new opinions in this

affidavit were given many months after expert disclosures were due, and even after Plaintiff was apprised of Defendants' basis for moving for summary judgment. Plaintiff is not permitted to submit an affidavit in response to Defendants' motion for summary judgment when the affidavit gives new opinions that were not offered in the original report. *See Complaint of Kreta Shipping, S.A.*, 181 F.R.D. 273, 275 (S.D.N.Y. 1998) ("Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)[.]"). Plaintiff has offered no explanation for his lack of compliance with Rule 26, and it seems clear that the affidavit was filed merely to survive Defendants' motion for summary judgment. Allowing this affidavit would severely prejudice Defendants since they had already presented their arguments for why summary judgment is appropriate before Plaintiff submitted the affidavit. Although this affidavit is certainly important to Plaintiff, that factor alone does not bar its preclusion. *See Arnold*, 232 F.R.D. at 68 n.5 ("The court acknowledges that in a products liability case expert testimony is typically of significance to a plaintiff's ability to sustain his burden of proof; however, if this factor was accorded predominant weight in determining a motion to preclude, no such motions would ever be granted."); *Morritt v. Stryker Corp.*, No. 07-CV-2319, 2011 WL 3876960, *7 (E.D.N.Y. Sept. 1, 2011) (precluding portions of an expert declaration in a products liability case while acknowledging that "testimony regarding alternative designs is undoubtedly important because plaintiffs require expert testimony to make out a prima facie case in strict products liability for design defects."). The Court will not, however, exclude the entire affidavit, as some portions of the affidavit are consistent with Dr. Pugh's original report. Accordingly, the Court will preclude those portions of the affidavit that offer a new opinion that was not expressed in Dr. Pugh's report.

In sum, the Court will not preclude Dr. Pugh's original report, but will preclude the opinions in Dr. Pugh's affidavit that are outside the scope of the opinions given in his original report.

**D.      Plaintiff's Causes of Action**

Plaintiff asserts five causes of action, including negligence, strict products liability, breach of express and implied warranties, major defect, and negligent failure to warn or to take corrective action.  *See* Dkt. No. 2 ¶¶ 17-58.  In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff concedes that his claims for negligence, breach of warranty, major defect, and failure to warn should be dismissed.  *See* Dkt. No. 38-18 at 14.  Accordingly, Defendants' motion for summary judgment is granted with respect to those claims.

Plaintiff's only remaining claim is for strict products liability.  Although Plaintiff's complaint appears to allege strict liability based on manufacturing defect, design defect, and failure to warn, Plaintiff only argues that his design defect claim should survive summary judgment.  *See id.* at 1, 9-14.  As such, the only remaining claim that the Court will discuss is Plaintiff's strict products liability claim based on a design defect.[2]

*1. Successor Liability*

At the outset, the Court must determine whether Kennametal is liable for the torts of the original manufacturer of the Pipe Cutter based upon Kennametal's asset purchase, as outlined above.  Under New York law, "[i]t is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor."  *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244 (1983).  However, in *Schumacher*, the New York Court of Appeals held that "[a]

---

[2] In any event, there is no evidence in the record establishing a products liability claim based on a manufacturing defect or failure to warn.

corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Id.* at 245. Plaintiff argues that the second and third exceptions apply here.[3] *See* Dkt. No. 38-18 at 3-4.

An asset purchase transaction may be deemed to fall within the second exception as a "de facto" merger, even if the parties did not formally merge, if four factors are present: "(1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of the liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets and general business operation." *In re N.Y. City Asbestos Litig.*, 15 A.D.3d 254, 256 (1st Dep't 2005) (citations omitted). A de facto merger does not necessarily require a finding of all four factors, *see id.*, but it has been held that "continuity of ownership is the essence of a merger." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 47 (2d Cir. 2003); *see also New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 211-12 (2d Cir. 2006).

"The first criterion, continuity of ownership, exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction." *N.Y. City Asbestos Litig.*, 15 A.D.3d at 256. In other words, continuity of ownership exists "where the parties to the transaction 'become owners together of what formerly

---

[3] The Court notes that there is no evidence that the first or fourth exceptions apply here, and Plaintiff does not appear to argue otherwise.

belonged to each.'" *Id.* (quoting *Cargo Partner*, 352 F.3d at 47). Here, there is no evidence in the record as to whether Kennametal's asset purchase was made with shares of its own stock or whether any owners of TDY Industries, LLC became direct or indirect shareholders of Kennametal as a result of the asset purchase. Plaintiff essentially concedes that there is no evidence in the record that there was a continuity of ownership between Kennametal and the former Landis Machine Co. *See* Dkt. No. 38-18 at 8. Plaintiff's only argument is that Kennametal failed to submit such evidence, and that "[a]ny inference regarding the same must be drawn against Kennametal, as the moving party." *Id.*

Although Plaintiff is correct that evidence must be viewed in the light most favorable to Plaintiff as the non-moving party, Plaintiff misconstrues the standard for summary judgment. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotation omitted). It is well settled that "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted). Of course, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists[,]" and "all ambiguities must be resolved and

all inferences drawn in favor of the party against whom summary judgment is sought." *Id.* at 1223 (citations omitted).

Here, there is no evidence in the record of a continuity of ownership between Kennametal and the former Landis Machine Co. Although Plaintiff argues that any inferences must be drawn against Kennametal, Plaintiff has the burden to prove the existence of a de facto merger, and Plaintiff "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *PriceWaterhouse Coopers*, 735 F.3d at 123. Plaintiff has failed to come forward with any evidence establishing a continuity of ownership.

With respect to the second criterion, Plaintiff argues that the seller entity, TDY Industries, LLC, left the business shortly after Kennametal's asset purchase. *See* Dkt. No. 38-18 at 8. To support this, Plaintiff cites to a one-page internet website posting. *See* Dkt. No. 38-7. The posting itself does not indicate which website the posting came from. *See id.* The posting states that TDY Industries, LLC went out of business as of June of 2014. *See id.* at 2.

"The principles governing admissibility of evidence do not change on a motion for summary judgment[,]" and "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church Of Sudan v. Talisman Energy*, *Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)). "Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801." *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306, *5 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 Fed. Appx. 204 (2d Cir. 2009). Here, this website posting is being offered for the truth of the matter asserted, and does not appear to be a statement made by a declarant who could testify at trial. Accordingly, it is inadmissible hearsay and will not be

considered by the Court on this motion.[4]  Moreover, the posting has not been properly

authenticated.  Plaintiff's attorney submitted an affidavit citing the website posting in support of

his assertion that TDY Industries, LLC went out of business following the asset purchase, but

Plaintiff's attorney does not have the personal knowledge to authenticate the posting.  *See id.*

("While plaintiff's declaration purports to cure his inability to authenticate the documents printed

from the internet, he in fact lacks the personal knowledge required to set forth with any certainty

that the documents obtained via third-party websites are, in fact, what he proclaims them to be.").

Since this posting is the only evidence Plaintiff relies on to establish the purported dissolution of

TDY Industries, LLC, Plaintiff has failed to raise any questions of fact regarding the second

criterion.  The Court also notes that the evidence in the record reflects that TDY Industries, LLC

sold only the remaining assets of its Landis Division to Kennametal.  *See* Dkt. No. 34-3 ¶ 13.

There is also very little evidence in the record establishing the third and fourth criteria,

although Plaintiff has at least raised some questions of fact with respect to these criteria.  Plaintiff

argues that "Kennametal's acquisition of and de facto merger with the original Landis Machine

Co. . . . resulted in its acquisition of the good will, clients, servicing agreements, engineering,

patents, copyrights, and customer lists, as well as the right to use the Landis trade name, as

prominently advertised on Kennametal's website and telephone listings in April, 2015." Dkt. No.

38-18 at 6.  To support this, Plaintiff relies on what appears to be a page from Kennametal's

website and a yellow page listing showing the address of Teledyne Landis Machine.  *See* Dkt.

Nos. 38-6, 38-10.  Hearsay problems notwithstanding, the posting from Kennametal's website at

best establishes that Kennametal continued to use the Landis trade name after its asset purchase,

---

[4] It is unclear from the posting itself which website the posting came from, although
Plaintiff labeled the posting as a "Bloomberg Listing" on the docket.  Regardless, the posting is
inadmissible hearsay and Plaintiff presents no argument that this posting is admissible.

and sold some Landis products.  *See* Dkt. No. 38-6.  Plaintiff's counsel apparently called the telephone number listed for Teledyne Landis Machine in the yellow pages, and the phone rang directly to Kennametal's sales office.  *See* Dkt. No. 38 ¶ 18.  As such, it does appear that Kennametal is at the same location that Landis Machine Co. was originally located.

Plaintiff also relies on a newspaper article in which Kennametal's corporate communications manager, Christina Sutter, claimed that operations were "business as usual" at Landis Threading Systems after Kennametal's asset purchase from TDY, Industries, LLC.  *See* Dkt. No. 38-8.  It is well settled that "hearsay, and news articles in particular, which are being offered for the truth asserted are inadmissible to defeat a motion for summary judgment." *Jackson v. Jimino*, 506 F. Supp. 2d 105, 113 (N.D.N.Y. 2007).  Although Plaintiff consistently cites this newspaper article and refers to Ms. Sutter's "business as usual" quote, Plaintiff fails to address the hearsay problems with this article.  The Court acknowledges that, if Ms. Sutter is employed by Kennametal, Ms. Sutter's statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2)(D).  However, the newspaper article itself is still inadmissible hearsay as it is being offered for the truth of the matter asserted, and the Court will not consider it as part of the admissible record at the summary judgment stage.[5]  Plaintiff also attached several other newspaper articles and website postings which the Court will not consider as part of the admissible record.  *See* Dkt. Nos. 38-8, 38-9.

---

[5] Courts have considered newspaper articles as part of the admissible record when the admissions contained in the newspaper article are made by a party opponent under Fed. R. Evid. 801, "provided the article is a recorded recollection under Rule 803(5), or falls within the 'residual exception' of Rule 807."  *Mandal v. City of New York*, Nos. 02 Civ. 1234, 02 Civ. 1367, 02 Civ. 6537, 2006 WL 3405005, *2 (S.D.N.Y. Nov. 26, 2006).  Neither of those exceptions apply here, nor does Plaintiff present any argument that this newspaper article is not hearsay.

Specifically with respect to the third criterion, Plaintiff argues that Kennametal must have assumed the liability obligations of TDY Industries, LLC, since those liabilities "rested with no surviving entity, other than Kennametal." Dkt. No. 38-18 at 8. Plaintiff relies on a 1997 purchase agreement between Teledyne Industries, Inc. and Barth to support this. *See id.* 8-9; Dkt. No. 38-4. Plaintiff argues that when Teledyne Industries, Inc. sold certain assets to Barth, Barth did not assume any liabilities pursuant to that purchase agreement. *See* Dkt. No. 38-18 at 8. Plaintiff further contends that Kennametal continued to advertise the same product line that was purportedly sold to Barth. *See id.* Plaintiff appears to conclude that, since Barth did not assume any liabilities pursuant to that agreement, Kennametal must have assumed the liabilities of TDY Industries, LLC when Kennametal purchased the remaining assets of TDY Industries, LLC's Landis Division. *See id.* at 7-9. However, the purchase agreement between TDY Industries, LLC and Kennametal is not in the record, and the Court has no way to determine exactly which assets were purchased or what the agreement says about Kennametal's assumption of liabilities. Moreover, although Plaintiff argues that the selling entity's business continued as usual after Kennametal's asset purchase, there is little evidence in the admissible record to support this.

In sum, there is no evidence in the admissible record that the first two factors are present. It does appear that Kennametal is at the same location as the original Landis Machine Co. and possibly selling at least some Landis products, so Plaintiff has raised at least some questions of fact regarding aspects of the third and fourth factors, although there is not much evidence in the admissible record to support those factors.[6] New York courts have held that, in the absence of the

---

[6] Plaintiff's attorney submitted an affidavit in opposition to Defendants' motion for summary judgment. *See* Dkt. No. 38. This affidavit has some statements that purport to raise questions of fact regarding whether there was a de facto merger. *See id.* ¶¶ 12-17. It is well settled that "[a]n attorney's affidavit about matters about which she has no personal knowledge cannot raise a material issue of fact." *In re W. Dist. Xerox Litig.*, 850 F. Supp. 1079, 1088

first two factors, the de facto merger exception does not apply. *N.Y. City Asbestos Litig.*, 15 A.D.3d at 259 ("Given the clear absence of the first two de facto merger factors, it does not avail plaintiff that the third factor . . . apparently is present, or that she may have raised an issue as to the presence of the fourth factor . . . .). Additionally, the Second Circuit has held that continuity of ownership is necessary for a de facto merger finding, even in tort cases.[7] *See Nat'l Serv. Indus.*, 460 F.3d at 212-13. Considering that there is no evidence in the record establishing the first two factors, and in particular the continuity of ownership factor, Plaintiff has not established the applicability of the de facto merger exception in this case.

Plaintiff also argues that the "mere continuation" exception applies here. "The 'mere continuation' exception refers to a continuation of the selling corporation in a different form, and not merely to a continuation of the seller's business. It applies where a purported asset sale is in effect a form of corporate reorganization." *Cargo Partner AG v. Albatrans Inc.*, 207 F. Supp. 2d 86, 95 (S.D.N.Y. 2002). "For this exception to come into operation the purchasing corporation must represent merely a 'new hat' for the seller. That is, it is not simply the business of the original corporation which continues, but the corporate entity itself." *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834, 839 (S.D.N.Y. 1977) (citations and internal quotation marks omitted). "A continuation envisions a common identity of directors [and]

_____

(W.D.N.Y. 1994). Moreover, the affidavit largely relies on newspaper articles and other websites that the Court has already ruled to be inadmissible. The Court is not striking the affidavit, but the statements based on inadmissible evidence or about matters in which Plaintiff's attorney has no personal knowledge of do not raise issues of fact that preclude summary judgment.

[7] The Second Circuit has instructed that, although a finding of continuity of ownership is necessary, courts should apply the standard flexibly in tort cases. *See Nat'l Serv. Indus.*, 460 F.3d at 215 n.5 ("This does not mean, however, that the court might not read those standards flexibly in tort cases and that other indicia of control over or continuing benefit from the sold assets might not be sufficient to satisfy the continuity of ownership factor."). Here, even applying the standards flexibly, there is simply no evidence that this factor is present in this case.

stockholders and the existence of only one corporation at the completion of the transfer." *Societe Anonyme Dauphitex v. Schoenfelder Corp.*, No. 07 Civ. 489, 2007 WL 3253592, *5 (S.D.N.Y. Nov. 2, 2007) (quoting *Laidlaw-Coggeshall*, 431 F. Supp. at 839). Here, there is virtually no evidence in the record of a mere continuation. There is no indication that there is a common identify of directors and stockholders between the two entities or that the "entity itself" of TDY Industries, LLC continued after Kennametal's asset purchase.

Accordingly, Plaintiff has failed to establish that Kennametal is liable for the torts of the manufacturer of the Pipe Cutter. As such, Defendants are entitled to summary judgment on Plaintiff's design defect claim, which is Plaintiff's only remaining claim. In the alternative, the Court will also briefly analyze the substance of Plaintiff's design defect claim, as Plaintiff has failed to establish an essential element of that claim.

### 2. Design Defect

Plaintiff argues that the Pipe Cutter was defectively designed because it did not have a safety guard at the operation area. *See* Dkt. No. 38-18 at 9. Plaintiff submitted an expert report by Dr. Pugh, which stated that "it was economical and feasible to provide a guard on the machine to prevent the injury." Dkt. No. 34-17 at 3.

Defendants claim that whether an alternative safer design was available must be measured at the time of manufacture, and there is no evidence in the record that it would have been feasible to add a guard to the Pipe Cutter at the time it was manufactured. *See* Dkt. No. 34-5 at 16-18. Defendants further argue that, "[w]here there was in fact some form of after-added guard present on the Pipe Cutter at the time of [Plaintiff's] injury, there is no logical way for the court or a jury to conclude that the original lack of guards was a proximate cause of [Plaintiff's] injury." *Id.* at 20.

"In a claim for defective design, plaintiff must make a showing that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001) (citations omitted). "In order to prove liability grounded upon a design defect, New York law requires plaintiffs to proffer expert testimony as to the feasibility and efficacy of alternative designs." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 740 (E.D.N.Y. 2016) (citations omitted). Moreover, "[i]n establishing a design defect, the plaintiff must show that there was an economically and technically feasible alternative design available at the time the product was manufactured." *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 252 (E.D.N.Y. 2014) (citing *Ruthosky v. John Deere Co.*, 235 A.D.2d 620, 622 (3d Dep't 1997)). In the present matter, Plaintiff has failed to establish that a safer, alternative feasible design existed at the time of manufacture, and thus has failed to establish a design defect claim. Since Plaintiff fails to establish that element, the Court will not analyze the other elements.

Plaintiff argues that UPSCO's installation of a Plexiglas guard at the operation area of the rollers after Plaintiff's accident establishes that a safer, feasible alterative design was available. *See* Dkt. No. 38-18 at 11. Indeed, this was the only reason given by Dr. Pugh in his report that establishes a feasible alternative design. Dr. Pugh concluded that, "[c]learly, the hazard could be economically and feasibly guarded because of the remedial measure placed on the machine after the accident." Dkt. No. 34-17 at 3. There is no other evidence in the record establishing the availability of a feasible alternative design, other than UPSCO's installation of the Plexiglas guard

after the accident and Dr. Pugh's assertion that such a design was feasible because of this remedial measure taken.[8]

Plaintiff cites to cases that have held that a post-accident modification to a machine can demonstrate a feasible alternative design. Plaintiff relies on *Legari v. Lawson Co.*, which held that "[i]t was undisputed that, after this accident, the machine's hand-operated buttons were modified so that it became necessary to keep both hands on the buttons to continue operation of the machine, demonstrating the feasibility of a safer design." *Legari v. Lawson Co.*, 189 A.D.2d 1089, 1092 (3d Dep't 1993). Other district courts applying New York law have also held that "the existence of a feasible alternative design may be established by pointing to the existence of a post-accident design at the plaintiffs workplace." *Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d 729, 751 (W.D.N.Y. 2015).

Although there are certainly cases supporting Plaintiff's theory that a post-accident modification may establish a feasible alternative design, the Court finds that UPSCO's post-accident modification in this case, which occurred at least fifty-six years after the Pipe Cutter was designed, does not sufficiently demonstrate the existence of a feasible alternative design at the time of manufacture. In *Almonte*, the plaintiff was injured in 2008 by a conveyor in an inspection system that was used to sort brake shoes. *See id.* at 734-35. The inspection system was installed in 2004. *See id.* at 735. After the plaintiff's injury, his employer installed a safety guard on the conveyer. *See id.* at 751. Moreover, the plaintiff's expert testified that the new guard was not cost-prohibitive and that it made the conveyer safer. *See id.* at 751 n.16. The court held that the

---

[8] As discussed above, in Dr. Pugh's affidavit, he opined that other machines that were designed around the time that the Pipe Cutter was designed included proper guarding of the danger zone and that it was feasible to include such guarding on the Pipe Cutter at that time. *See* Dkt. No. 38-17 ¶¶ 21-23. As discussed, the Court is not considering those portions of Dr. Pugh's affidavit, as they go well beyond the scope of his original report.

addition of a guard by the plaintiff's employer demonstrated the feasibility of an alternative design. *See id* at 751-52. The Court notes that, in that case, the injury occurred merely four years after the installation of the conveyer, and the plaintiff offered expert testimony regarding the cost of the modification.

Here, on the other hand, the post-accident modification occurred at least fifty-six years after the Pipe Cutter was designed and manufactured. Plaintiff's expert has not offered any opinion about the costs of including such guarding at the time of manufacture, or whether such guarding had been implemented at that time.[9] Defendants' expert claims that guarding point-of-operation hazards was not common at the time of manufacture and that the Pipe Cutter's design complied with machine design principles and standards at the time in question. *See* Dkt. No. 34-15 at 12, 14. The Court acknowledges that the question of compliance with industry standards is typically one factor that should be considered by the jury, and is insufficient to support summary judgment. *Mustafa v. Halkin Tool, Ltd.*, No. 00-CV-4851, 2007 WL 959704, *8 (E.D.N.Y. Mar. 29, 2007). While Defendants could not be granted summary judgment based on their expert's testimony of industry standards alone, Plaintiff has not submitted any evidence that a feasible design alternative was available at the time of manufacture.

Plaintiff also relies on *Jiminez v. Dreis & Krump Mfg. Co.*, 736 F.2d 51 (2d Cir. 1984). In that case, the Second Circuit held that it was improper for the district court to grant summary

---

[9] In Dr. Pugh's affidavit, he stated that "[b]ased on the simple and inexpensive nature of the fixed guard added to the Pipe Cutter by Plaintiff's employer after Plaintiff's accident . . . the Pipe Cutter . . . could have been economially and feasibly guarded at the time said machine was designed, manufactured, and sold." Dkt. No. 38-17 ¶ 19. Merely because it was inexpensive to add a Plexiglas guard to the machine in 2012 has no bearing on the costs of such guarding in 1956. Likewise, it may have been a simple to add such guarding in 2012, but Plaintiff offers no testimony regarding whether such guarding had been thought of or was being used at the time of manufacture.

judgment to the defendant when a genuine issue of fact existed with respect to whether the press that caused the plaintiff's injury should have been designed with a guard. *See Jiminez*, 736 F.2d at 54. However, in that case, the "appellant's expert stated that there were guards that could have been installed *at the time of manufacture* which would have resulted in a safer press." *Id.* (emphasis added). As such, the Second Circuit concluded that "[a]ppellant therefore established the existence of a genuine issue of material fact regarding whether there was a type of guard which might have, and should have, been installed by [defendant] at the time of manufacture." *Id.* Unlike the plaintiff in *Jiminez*, Plaintiff here offers no testimony regarding whether such design was feasible at the time of manufacture. Accordingly, Plaintiff has failed to establish a claim for design defect, and summary judgment for Defendants is appropriate.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 34) is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to deem the entire statement of material facts as admitted (Dkt. No. 39) is **GRANTED in part** as discussed herein; and the Court further

**ORDERS** that Defendants' motion to preclude Plaintiff's expert's report and affidavit (Dkt. No. 40) is **GRANTED in part** as discussed herein; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 7, 2017
       Albany, New York

Mae A. D'Agostino
U.S. District Judge